UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBRA S. GOEDHART,<br><br>                Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | NO.  C13-720-RSM-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Debra S. Goedhart appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-six year old woman with a high school education and one year of college. Administrative Record ("AR") at 91. Her past work experience includes employment as a tour coordinator for Sour Dough Tours of Kitchikan, Alaska, a hotel front desk clerk, a pull tab dealer, a certified nursing assistant, and a

REPORT AND RECOMMENDATION - 1

bartender.  AR at 68-69, 83-84, 90, 361.  Plaintiff was last gainfully employed in September 2006.  AR at 67.

On January 27, 2010, plaintiff filed applications for SSI payments and for DIB, alleging an onset date of September 26, 2006.  AR at 170, 174.[1]  Plaintiff asserts that she is disabled due to post-traumatic stress disorder ("PTSD"), depression, anxiety, a panic disorder, fibromyalgia, ankle pain, and L5-S1 spondylolisthesis.  Dkt. 15 at 2 (citing AR at 267, 273, 394, 500).

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 102, 108.  Plaintiff requested a hearing, which took place on October 25, 2011.  AR at 64-97.  On January 10, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform her past relevant work as a bartender, front desk clerk, pull-tab dealer, and clerk.  AR at 21-39.  Plaintiff's request for review by the Appeals Council was denied, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 29, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

---

[1] Plaintiff's date last insured for her Title II claim was June 30, 2011.  AR at 66.  Although plaintiff's title XVI application identifies January 25, 2006 as the alleged onset date, the Title II application notes September 26, 2006, which is the date the ALJ uses in her decision.

REPORT AND RECOMMENDATION - 2

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Ms. Goedhart bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

REPORT AND RECOMMENDATION - 3

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On January 10, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since September 26, 2006, the alleged onset date.

3. The claimant has the following severe impairments: posttraumatic stress disorder, status post left ankle fracture, degenerative disc disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a

REPORT AND RECOMMENDATION - 5

       range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can sit, stand, and walk for about 6 hours in an 8-hour day with normal breaks. The claimant has no postural limits or restrictions. She should avoid concentrated exposure to vibration, or operation of hazardous equipment or machinery. The claimant can interact, take instructions, and directions from supervisors. She can interact appropriately with coworkers and members of the public. The claimant has the ability to perform detailed and complex tasks. She would work best in tasks she's already learned and acquired and not have to learn new detailed and complex tasks. She is otherwise able to work competitively through the course of a workday.

6.    The claimant is capable of performing past relevant work as a bartender (DOT 312.474-010, light, SVP 3), front desk clerk (DOT 238.367-038, light SVP 4) pull-tab dealer (DOT 343.464-010, light SVP 5), and clerk (DOT 237.367-022, sedentary, SVP 4). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 26, 2006, through the date of this decision.

AR at 26-34.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err in evaluating the medical opinions of examining physicians Daniel Brinkman, Psy.D, Wayne Keton, M.D., Luci Carstens, Ph.D., Kevin Zvilna, Ph.D., A. Chambers, M.D., and Kimberly Merris, M.D.?

2.    Did the ALJ err in evaluating the "other source" opinion of Angela Belcaster, ARNP?

Dkt. 15 at 1-2; Dkt. 18 at 1.

VII.   DISCUSSION

A.   <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        2.     *Daniel Brinkman, Psy.D., Wayne Keton, M.D., Luci Carstens, Ph.D. and Kevin Zvilna, Ph.D.*

The ALJ asserted that "as for the opinion evidence, the multiple DSHS evaluations completed by Drs. Brinkman, Keton, Carstens, and Zvilna are granted minimal weight, as each relied primarily upon the claimant's subjective reporting in forming their opinions." AR at 32. Specifically, the ALJ asserted that "the record demonstrates that the claimant's subjective reporting is inconsistent with her treatment records and that the claimant is disproportionately concerned with her continued receipt of benefits, thus diminishing the veracity of her statements upon which these professionals relied." AR at 32. In addition, "these opinions stand in stark contrast to those of Dr. Keonen, Nelson, and Peterson." AR at 32.

On August 14, 2008, Dan Brinkman, M.D., evaluated plaintiff for DSHS. AR at 272. Dr. Brinkman diagnosed plaintiff with severe major depression without psychotic features and PTSD. AR at 273. He noted that plaintiff reported feelings of "doom" and decreased mood, as

well as the tendency to isolate. AR at 273. During the mental status examination, plaintiff was tense, sad, and avoided eye contact. With respect to cognitive limitations, he opined that plaintiff would be moderately limited in her ability to understand, remember and follow complex instructions; learn new tasks; and perform routine tasks, and markedly limited in her ability to exercise judgment and make decisions. AR at 274. He described the "basis for each rating" as the fact that she "has memory and concentration problems (used to be well organized)." AR at 274. With respect to social factors, he opined that plaintiff would be markedly limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and moderately limited in her ability to care for herself, including personal hygiene and appearance. AR at 274. Dr. Brinkman noted that her social limitations arose from her "depression," AR at 274, and that plaintiff was not currently on medications for her mental health but needed "symptom stabilization." AR at 274-75.

Dr. Keton performed a psychological evaluation of the plaintiff on January 6, 2010, and does not appear to have reviewed any medical records for his opinion. AR at 345. He noted that she has had a "history of recurrent anxiety and depression and currently meets DSM IV criteria for panic disorder and major depression." AR at 345. Dr. Keton noted that plaintiff had a depressed mood, poor concentration, poor energy, poor sleep, and anxiety attacks. AR at 346. He stated that plaintiff's depressed mood made it "difficult to focus," plaintiff's poor sleep was "associated with decreased concentration," her anxiety attacks "make being in social situations difficult," her poor concentration "makes learning new tasks difficult," and her poor energy made it "hard to get to work and hard to do a full day." AR at 346. As a result, he diagnosed plaintiff with a major depressive episode, a panic disorder, and fibromyalgia. AR at 347. With respect to Axis IV, he stated that plaintiff has had "multiple family deaths in last 6

months" and that her GAF score was 35 as she is "not functioning well due to poor sleep, decreased energy and concentration and anxiety." AR at 347.[3]

Dr. Keton further opined that plaintiff would be moderately limited in her ability to understand, remember, and follow simple instructions; learn new tasks; exercise judgment and make decisions; perform routine tasks; interact appropriately with public contacts; care for herself; and maintain appropriate behavior in a work setting. AR at 348. In addition, he felt she would be markedly limited in her ability to understand, remember and follow complex instructions; relate appropriately to co-workers and supervisors; and respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 348. However, Dr. Keton did not provide any observations as a basis for these determinations. AR at 348.

Dr. Carstens stated that she reviewed only Dr. Keton's report for plaintiff's relevant medical history. AR at 393, 396. Dr. Carstens diagnosed PTSD, major depressive disorder, panic disorder, and anxiety disorder, and assessed a GAF score of 45-50 based on "clinical observation, client input." AR at 394. During Dr. Cartens' mini-mental status exam, plaintiff successfully performed all "attention" tasks," and although plaintiff did not perform all the "concentration" tasks she was in the borderline range. AR at 397. The record does not contain any functional limitations assessed by Dr. Carstens.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."

REPORT AND RECOMMENDATION - 10

1   Dr. Zvilna evaluated plaintiff on November 16, 2011.  He described plaintiff's medical
2   history based upon his interview with her, and apparently did not review other medical records.
3   AR at 500-02.  He noted plaintiff's report that she "could not work on a dock after the [jet]
4   crash" due to her anxiety, and that as a result of her depression "I don't want to be around
5   anybody.  I've just become a recluse."  AR at 500.  He also indicated that he did not personally
6   observe plaintiff's anxiety or depressive symptoms.  AR at 500.  Nevertheless, he diagnosed
7   plaintiff with PTSD, major depressive disorder, nicotine dependence, osteoarthritis, joint pain
8   with possible fibromyalgia, and ankle "hardware."  AR at 500.  He noted that although she was
9   "unable to work, [she] may benefit from volunteering in the future."  AR at 501.  He noted that
10  she had "poor short term memory issues, based on [mini mental status exam]," but did not
11  explain how he arrived at this determination.  AR at 502.

Plaintiff argues that "the ALJ erred in rejecting the DSHS examining source opinions as relying primarily upon Plaintiff's subjective reporting." Dkt. 15 at 8.  "First, these sources supported their opinions with their own observations and findings." *Id*. at 8-9.  In addition, plaintiff asserts that the ALJ may not simply reject the opinion of an examining physican's opinion because he finds plaintiff not credible." *Id*. at 9 (citing *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1199-2000 (9th Cir. 2008) (providing that a ALJ "does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those opinions and supports his ultimate opinion with his own observations.")).  Thus, plaintiff contends that the ALJ erred by affording more weight to the opinions of Drs. Koenen, Nelson, and Peterson, two of whom were non-examining physicians.  *Id*. at 10.

The Commissioner responds that *Tommasetti v. Astrue*, which post-dates *Ryan v. Comm'r of Soc. Sec. Admin*., holds that "an ALJ may reject a treating physician's opinion if it

REPORT AND RECOMMENDATION - 11

1   is based 'to a large extent' on a claimant's self-reports that have been properly discounted as

2   incredible." Dkt. 18 at 4 (citing *Tommasetti*, 533 F.3d 1035, 1041 (9th Cir. 2008)).  Here, the

3   ALJ found plaintiff not credible, and plaintiff does not challenge the ALJ's credibility finding.

4   *Id*. (citing AR at 32).  Thus, the Commissioner argues that the fact that the DSHS

5   psychological opinions of Drs. Brinkman, Keton, Carstens, and Zvilna were based on

6   plaintiff's incredible reports constitutes a proper reason for rejecting them.  *Id*. at 4.

7        The Court agrees with the Commissioner.  The Ninth Circuit has held that "an ALJ may

8   reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports

9   that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041.  The ALJ

10  did not err by finding that the opinions of Drs. Brinkman, Keton, Carstens, and Zvilna were all

11  based "to a large extent" upon plaintiff's self-reported symptoms and limitations, which the

12  ALJ found less than fully credible.

13       For example, Dr. Brinkman referenced plaintiff's self-reported feelings of "doom,"

14  pain, and self-isolation at home.  AR at 273.  His finding that she has memory problems was

15  also based upon her report that she "used to be well organized," as Dr. Brinkman would have

16  had no basis to make such an observation.  AR at 274.  Similarly, Dr. Keton assessed

17  limitations in plaintiff's concentration based upon her self-reported "poor sleep," social

18  limitations based upon her self-report of anxiety attacks, and asserted that her "poor energy"

19  made it "hard to get to work and hard to do a full day."  AR at 346.  Dr. Carstens appears to

20  have relied in large part upon Dr. Keton's findings, and noted that his diagnoses were based on

21  "clinical observation, client input."  AR at 394.  His mini-mental status exam appears

22  inconsistent with his findings, as it shows successful completion of the "attention" tasks and

23  borderline performance on the "concentration" tasks.  AR at 397.  Finally, Dr. Zvilna noted

24  that he did not personally observe symptoms of depression or anxiety, and described her

REPORT AND RECOMMENDATION - 12

medical history apparently based solely upon his interview with her. AR at 500-02. Nonetheless, he diagnosed PTSD, major depressive disorder, nicotine dependence, osteoarthritis, joint pain with possible fibromyalgia, and ankle "hardware." AR at 500. Moreover, Dr. Zvilna appears to have relied heavily upon her self-report that she "could not work on a dock after the [jet] crash" due to her anxiety, and that as a result of her depression "I don't want to be around anybody. I've just become a recluse." AR at 500.

Accordingly, the ALJ did not err by affording the opinions of Drs. Brinkman, Keton, Carstens, and Zvilna "minimal weight" because "each relied primarily upon the claimant's subjective reporting in forming their opinions." AR at 32. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a plaintiff). It is also undisputed that their opinions conflicted with the opinions of Drs. Koenen, Nelson, and Peterson, which the ALJ afforded greater weight. AR at 32. These were specific and legitimate reasons for rejecting the opinions of Drs. Brinkman, Keton, Carstens, and Zvilna, supported by substantial evidence.

*3.     A. Chambers, M.D.*

Dr. Chambers completed a physical evaluation of plaintiff for DSHS on December 28, 2009. AR at 339. She observed that plaintiff had difficulty lifting her right shoulder above 90 degrees, and that she reported pain in her lower back and hips. AR at 340. Dr. Chambers opined that plaintiff's fibromyalgia would cause moderate limitations in her ability to walk and lift, and her depression would cause moderate limitations in her ability to understand or follow directions. AR at 341. Plaintiff would also have difficulty crouching and kneeling due to her limited range of motion and pain in her ankles. AR at 341. As a result, Dr. Chambers opined that plaintiff would be capable of sedentary work. AR at 341.

REPORT AND RECOMMENDATION - 13

The ALJ noted that "Dr. Chambers opined in a December 28, 2009 DSHS physical evaluation that the claimant was limited to sedentary level work based upon her diagnoses of fibromyalgia and depression and limitations in crouching and kneeling secondary to limited range of motion and ankle pain." AR at 33. However, "Dr. Chambers did not physically examine the claimant and appears to have relied entirely on the claimant's subjective statements. The evidence [in] the treatment records is not consistent with Dr. Chambers' opinion, and the lack of objective evidence obtained by Dr. Chambers results in her opinion being granted limited weight." AR at 33.

Plaintiff argues that the ALJ erred in rejecting Dr. Chambers' opinion for the same reasons that she erred in rejecting the opinions of Drs. Brinkman, Keton, Carstens, and Zvilna. Dkt. 15 at 10-11. The Commissioner responds that the ALJ properly discounted Dr. Chambers' opinion as being based upon plaintiff's subjective statements, inconsistent with Dr. Chambers' physical examination results, and unsupported by the objective evidence. Dkt. 18 at 7.

The Court agrees with the Commissioner that Dr. Chambers' opinion appears to be based primarily upon plaintiff's subjective statements, as she did not perform a range of motion evaluation or note any issues with plaintiff's ankles based upon her examination results. AR at 340. Indeed, the "Range of Motion Evaluation Chart" accompanying Dr. Chambers' evaluation was left entirely blank. AR at 343-44. In addition, plaintiff's gait and station were within normal limits, and Dr. Chambers did not note any limits on agility, mobility, or flexibility. AR at 340. Despite the lack of objective findings resulting from her examination, Dr. Chambers limited plaintiff to sedentary work and prescribed limitations in plaintiff's crouching and kneeling based upon "limited [range of motion], pain in ankles." AR at 341. The ALJ did not err by concluding that these limitations appear to be primarily based

REPORT AND RECOMMENDATION - 14

upon plaintiff's allegations of pain, and were unsupported by Dr. Chambers' physical examination results. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (determining that a medical opinion is contradicted by the same doctor's notes, observations, and opinions is "a permissible determination within the ALJ's province."). The ALJ properly provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Chambers' opinion.

### 4.     Kimberly Merris, M.D.

On June 14, 2007, Dr. Merris performed a physical examination of plaintiff. AR at 260. Dr. Merris noted that plaintiff's left ankle was tender "where a screw is palpable," and there was slight atrophy of her left calf, although plaintiff "favors L leg." AR at 260. Dr. Merris reported that plaintiff was able to walk on her heels, but not her toes, and could hop on her right foot but not her left. AR at 260. Dr. Merris diagnosed plaintiff with chronic left ankle pain and dysfunction status post-fracture and surgical repair, and mild lower back pain due to abnormal gait due to ankle. AR at 260. Dr. Merris opined that plaintiff was "physically unable to perform a job with significant standing or walking due to L ankle." AR at 260.

The ALJ afforded Dr. Merris' opinion little weight, and mistakenly identified it as Dr. Chelius' opinion. AR at 33.[4] Specifically, the ALJ stated that "Graham Chelius, MD opined at a June 14, 2007 exam that the claimant was "physically unable to perform a job with significant standing or walking due to [left] ankle." AR at 33 (citing AR at 260). The ALJ afforded this opinion "little weight," as "subsequent treatment records have shown the claimant's ankle pain to have subsided with time and cyclobenzapine." AR at 33 (citing AR at

---

[4] The Court notes that Dr. Merris and Graham Chelius, M.D., apparently both work at the Sitka Medical Center. AR at 260, 265. Although the ALJ mistakenly attributed Dr. Merris' opinion to Dr. Chelius, this error was harmless as it was "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

REPORT AND RECOMMENDATION - 15

399-405). Specifically, the ALJ was citing to plaintiff's treatment notes from Village Family Health, which reflect a prescription for Cyclobenzaprine and do not reflect current pain complaints relating to her past left ankle fracture during several physical examinations.  AR at 399-405.

The ALJ did not err by affording Dr. Merris' opinion little weight based upon the fact that it was contradicted by later findings.  AR at 30, 33, 260.  Specifically, the Court agrees with the Commissioner's argument that "[a]lthough in 2007, Dr. Merris noted Plaintiff had chronic left ankle pain and opined Plaintiff was unable to perform a job with significant standing or walking due to her left ankle, subsequent opinion evidence does not show Plaintiff to be so limited."  Dkt. 18 at 7.  For example, the Commissioner points out that "the one reference to Plaintiff's left ankle in the treatment records from the Everson Family Practice is dated 2008 and showed Plaintiff had a normal range of motion in her ankle and was neurologically intact."  *Id.* at 8 (citing AR at 317).  In fact, those notes reflect "complaints of joint pain" in plaintiff's "arms, hips, shoulders.  Searing pain.  This has been going on for the past 3 months," but do not reflect similar complaints of limitations and ongoing pain relating to plaintiff's left ankle.  AR at 316.  Instead, these treatment notes reflect that there was "no deformity noted with normal posture and gait," and that plaintiff's "left ankle: normal ROM," although she had a "tender lateral malleoli with protrusion of screw."  AR at 317.  Similarly, treatment records from Swedish Family Medicine two years after Dr. Merris' report contain few complaints about plaintiff's ankle, though physical examinations were conducted.  AR at 409, 415, 428, 434, 452, 470.

Accordingly, the ALJ did not err by rejecting Dr. Merris' opinion that plaintiff is "physically unable to perform a job with significant standing or walking due to L ankle," AR at 260, because "subsequent treatment records have shown the claimant's ankle pain to have

REPORT AND RECOMMENDATION - 16

subsided with time and cyclobenzapine." AR at 33. The ALJ could reasonably determine that plaintiff's most recent treatment notes were the most probative with respect to the impact of plaintiff's ankle impairment on her ability to work. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In any event, the ALJ is responsible for resolving conflicts in the medical evidence, and where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. The ALJ did not err in evaluating Dr. Merris' opinion.

        B.        The ALJ Did Not Err in Evaluating the "Other Source" Opinion of Angela Belcaster, ARNP

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Plaintiff established care with Angela Belcaster, ARNP on April 26, 2011. AR at 403. Plaintiff told her that she had been diagnosed with fibromyalgia in the past. AR at 403. Ms.

REPORT AND RECOMMENDATION - 17

Belcaster diagnosed plaintiff with PTSD, generalized anxiety disorder, and joint pain, and prescribed medications for plaintiff's mental impairments and Lyric for her joint pain. AR at 404. Ms. Belcaster also treated plaintiff on May 10, 2011 and May 24, 2011, and during these visits plaintiff reported being much less anxious and sleeping better. AR at 400, 402.

Ms. Belcaster submitted a Medical Source Statement of Ability to Do Work-Related Activities for plaintiff on July 15, 2011. AR at 472-75. Specifically, Ms. Belcaster opined that plaintiff can lift less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit less than 6 hours in an 8-hour workday, and has a limited ability to push and/or pull with her upper and lower extremities. AR at 472-73. Ms. Belcaster stated that these conclusions were based upon "diagnosis with fibromyalgia, PTSD, [and] anxiety disorder." AR at 473. She also indicated that plaintiff can "never" climb, balance, kneel, crouch, crawl, or stoop based upon her "diagnosis with fibromyalgia," and that her ability to reach, handle, finger, and feel are all "limited" to "occasional" based upon her fibromyalgia. AR at 473. Finally, she noted that plaintiff "has communicative limitations when psychiatric issues are impacting her [ability to] function." AR at 474.

The ALJ noted that "a medical source statement from Angela Belcaster, ARNP limiting the claimant to sedentary work is granted little weight. ARNP Belcaster is not an acceptable medical source under Agency rules and is thus not entitled to make medical diagnoses or offer medical opinions." AR at 33 (citing AR at 472-75). "Furthermore, ARNP Belcaster's findings are inconsistent with her own records, which show the claimant with no more than mild physical and mental symptoms." AR at 33 (citing AR at 399-404).

Plaintiff argues that "Ms. Belcaster had the opportunity to treat Plaintiff on three occasions prior to assessing functional limitations." Dkt. 15 at 13. Thus, "the ALJ's blanket rejection of Ms. Belcaster's opinions on the basis of Ms. Belcaster's status as a non-acceptable

REPORT AND RECOMMENDATION - 18

medical source was not legally sufficient." *Id*.  In addition, plaintiff contends that "although Ms. Belcaster had not diagnosed plaintiff with fibromyalgia in her treatment notes, the last treatment note is from May 24 and Ms. Belcaster's opinion about Plaintiff's functional limitations is dated July 15.  Thus, it is unknown what changed in the interim to make Ms. Belcaster of the opinion that Plaintiff had fibromyalgia and that her fibromyalgia would cause functional limitations." *Id*. at 14.

As a threshold matter, the Court declines plaintiff's invitation to infer that something changed between Ms. Belcaster's April and May 2011 treatment notes and her July 2011 Medical Source Statement that justified Ms. Belcaster's severe limitations based upon a "diagnosis with fibromyalgia," AR at 473, which plaintiff concedes was not among the diagnoses included in Ms. Belcaster's treatment notes.  The ALJ reasonably found that Ms. Belcaster's July 2011 Medical Source Statement was "inconsistent with her own records, which show the claimant with no more than mild physical and mental symptoms."  AR at 33 (citing AR at 399-404, 472-75).  As the Commissioner observes, "Ms. Belcaster's notes from May 10, 2011 and May 24, 2011 showed Plaintiff became progressively less anxious with every visit.  Ms. Belcaster's notes contained an overview of Plaintiff's body systems, and she noted no severe limitations in Plaintiff's extremities."  Dkt. 18 at 9 (citing AR at 400, 402, 404).  However, her July 15, 2011 opinion "determined that plaintiff was limited in every physical aspect: lifting, carrying, sitting, standing, walking, pushing, pulling, postural, and manipulative."  *Id*. (citing AR at 472-73).

Accordingly, the Court finds that the ALJ reasonably discredited Ms. Belcaster's opinion based upon the fact that it deviates substantially from her own treatment notes.  This was a germane for discounting the Ms. Belcaster's opinion.  The ALJ also did not issue a

REPORT AND RECOMMENDATION - 19

blanket rejection of Ms. Belcaster's opinions, as plaintiff alleges, based upon her status as an "other source." AR at 33.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED, and this matter DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 4th day of November, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge